# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

DOCKET NO. 3:07-cr-00276-W

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) SUPERIOR CONSTRUCTION CORPORATION, ) ) ) Defendant. ) ) | ORDER |

THIS MATTER is before the Court on the parties' cross-motions for summary judgment (Docs. Nos. 20, 24). Both motions have been fully briefed by the parties, and on August 8, 2008, the Could held a hearing and received oral arguments by both parties on the issues presented in the motions. Accordingly, this matter is ripe for disposition. For the reasons that follow, the Court DENIES IN PART and GRANTS IN PART Plaintiff's motin for summary judgment and DENIES Defemdant's motion for summary judgment.

### BACKGROUND

Defendant, under a contract dated March 24, 1999, was the general contractor for the construction of a condominium project located in the Ballantyne area of Charlotte, known, as Richmond Hill Condominiums ("Richmond Hill"). Defendant's contract with Richmond Hill required Defendant to complete a turn-key project. Plaintiff insured Defendant under successive Commercial Package policies of insurance, which contained general liability coverage ("Policy").

After the completion of construction, Richmond Hill discovered defects in the construction

of the condominiums. Richmond Hill brought suit against Defendant on November 2, 2005, for the cost to repair those defects ("Underlying Litigation"). Defendant tendered defense of the Richmond Hill action to Plaintiff; however, Plaintiff denied coverage to Defendant, stating that neither the Richmond Hill Complaint ("Underlying Complaint") nor additional information submitted by Defendant to Plaintiff triggered a duty to defend or indemnify under the insurance Policy. Eventually, Defendant settled the claims brought by Richmond Hill in the Underlying Litigation.

Plaintiff subsequently brought this action seeking a declaration that it did not have any duty to defend or indemnify Defendant for the Richmond Hill complaint and settlement. In sum, Plaintiff contends that the construction defects alleged in the Underlying Litigation do not give rise to "property damage," which is required in order to trigger coverage under the Policy. Plaintiff asserts that the damage alleged in the underlying complaint did not constitute "property damage" because the damage arose out of defects within the scope of work performed by Defendant under its contract with Richmond Hill. Defendant answered and also sought a declaratory judgment that, under the Policy, Plaintiff owed and breached its duty to Defendant to defend against the suit brought by Richmond Hill. Defendant argues that Richmond Hill sought damages for "property damage" as defined under the Policy because "property damage" includes damage to non-defective work of a general contractor caused by defective work of a subcontractor.

. On May 15, 2008, the parties issued a stipulation of partial dismissal of many claims, counterclaims, and defenses in this action. During oral argument, the parties conceded that as a result of the partial dismissal, the only remaining claims before this Court are whether Plaintiff had a duty to defend and/or indemnify Defendant in the Underlying Litigation under the terms of the Policy.

ANALYSIS

When sitting in diversity jurisdiction, this court looks to North Carolina choice of law principles in determining the applicable state law. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Under North Carolina choice of law principles, an insurance contract is governed by the law of the state in which the policy is delivered. Roomy v. Allstate Ins. Co., 256 N.C. 318 (1962). Since the policy in question was delivered in North Carolina, this court will interpret the policy according to North Carolina law.

Plaintiff and Defendant have filed cross motions for summary judgment on the issue of a duty to defend, and Plaintiff alone has moved for summary judgment on the issue of a duty to indemnify. Defendant contends in its brief and also stated at oral argument that no issue exists as to the duty to indemnify. Rather the sole issue for which it seeks relief requires a determination by the Court on the duty to defend. As such, Defendant has waived any objection to a ruling on the duty to indemnify and the Court finds that this issue shall be decided in favor of Plaintiff.

Whether an insurer's duty to defend has arisen depends primarily on the facts alleged in the initial pleadings against the insured defendant. "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt. of Carolinas, Inc. v. Peerless, 340 S.E.2d 374, 377 (N.C. 1986) (citations omitted). If, however, the pleadings allege facts indicating that the injury in question is not covered by the policy, and the insurer has no knowledge of facts that suggest otherwise, the duty to defend may not arise. Id. When the insurer knows or could reasonably ascertain facts that, if proven, would place the injury within the coverage of its policy, the duty to defend is not evaded simply because the third party's pleadings fail to allege coverage. Id. Thus,

the question of whether a duty to defend arose in this case depends initially on the contents of the Underlying Complaint, and then on what facts were known or could have been reasonable ascertained by Plaintiff at the time of the Underlying Litigation.

In the instant case, the parties agree that "property damage" falls within the insurance coverage provided by Plaintiff to Defendant. The parties disagree, however, as to whether the damages arising out of the Underlying Litigation constitute "property damage" as contemplated under the Policy and defined by North Carolina law. Thus, the inquiry hinges on the interpretation of the term "property damage."

A. Interpretation of the Term "Property Damage"

The Commercial General Liability (CGL) Coverage Form insures Defendant for liability due to "property damage," defined by the contract as "[p]hysical injury to tangible property, including all resulting loss of use of that property." In considering the question of whether the Underlying Complaint in the Underlying Litigation alleged the same type of "property damage" as covered by the policy, Defendant argues that this term should be interpreted under its plain meaning and urges this court to follow the reasoning of the Fourth Circuit in French v. Assurance Co. of America, 448 F.3d 693 (4th Cir. 2006). Defendant's argument is not persuasive, however, as the court's reasoning in French involved the interpretation of Maryland law, while the instant case arises under North Carolina law. It is well recognized that under the doctrine set forth in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), a federal court in a diversity action should apply state law as it exists under the rulings of the highest court of the state. Here, although the North Carolina Supreme Court has not addressed the issue before this Court, the North Carolina Court of Appeals opinion in Production Systems, Inc. v. Amerisure Ins. Co., 605 S.E.2d 663 (N.C. Ct. App. 2004), is directly on point. "An

intermediate state court['s] . . . determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question." Williams v. General Motors Corp., 393 F.Supp. 387, 394 (M.D.N.C. 1975) (quoting Union Trust Co. v. Field, 311 U.S. 169, 178 (1940) (citations omitted)). As such, French is irrelevant to the inquiry before the Court.

In North Carolina, "the term 'property damage' in an insurance policy has been interpreted to mean damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to the contract in the first instance." Production Systems, Inc., 605 S.E.2d at 666 (citing Hobson Construction Co., Inc. v. Great American Ins. Co., 322 S.E.2d 632 (N.C. Ct. App. 1984)). The court in Production Systems interpreted a standard CGL, functionally identical to the CGL used by Plaintiff and Defendant here, and concluded that it did not cover damages that resulted from incorrect construction. Id; see also Wm. C. Vick Constr. Co. v. Pennsylvania Nat. Mut., 52 F. Supp. 2d 569, 582 (E.D.N.C. 1999) ("Hobson indicates that damages based solely on shoddy workmanship (i.e., damages seeking repair costs and/or completion costs) are not 'property damage' within the meaning of a standard form CGL policy."). Thus, allegations that a property was not properly constructed in the first place would fall outside of North Carolina's interpretation of the term "property damage" as used in the Policy here.[1]

---

[1]Defendant also contends that, if the term "property damage" is read to exclude faulty craftsmanship performed within the scope of work, other broader terms and provisions of the CGL Coverage Form would effectively be read to a nullity. While Defendant is correct that contracts generally should be interpreted to give effect to all terms of the contract, in the instant case the CGL Coverage Form is a universal document intended to apply to and cover the law of many states which interpret the term "property damage" differently. Since North Carolina law defining "property damage" is well settled, these other terms and provisions to which Defendant cites simply can not be read to contract away North Carolina law without language more explicit to that point.

Damages caused by improvements or upgrades performed outside Defendant's scope of work, however, fall within the scope of "property damage."

B. Coverage Under the Policy for "Property Damage"

The Underlying Complaint alleged that the property was never properly constructed and specifically asserted that Defendant's work on the project was faulty. Each of the five claims included in the Underlying Complaint implied improper construction as the cause of the damages:

(1) Breach of Contract (alleging "failure to follow applicable code requirements . . . improper approval of defective materials and workmanship . . . failure to select proper materials . . . failure to supervise work of subcontractors . . . failure to construct brickwork, windows, ledges and doors in a manner which prevent moisture from damaging wooden components of the exterior," etc.);

(2) Negligence (alleging the same facts as the Breach of Contract claim);

(3) Breach of Express Warranty (alleging "the said Defendants failed to perform as warranted . . . poor workmanship resulted in the damages");

(4) Breach of Implied Warranty of Habitability (alleging "the condominiums, as constructed, fail to meet the standard of workmanlike quality prevailing at the time of construction and fail to satisfy the applicable standards of habitability"); and

(5) Negligent Failure to Warn (alleging "Defendants knew or should have known about the defects and deficiencies of the construction as described herein")

Thus, allegations of improper construction by the Defendant and its subcontractors permeate each of the claims in the Underlying Complaint. At initial glance, it may appear from the bare allegations that Plaintiff did not have a duty to defend. However, the inquiry of whether a duty to defend has arisen does not end with the facts and allegations of the Underlying Complaint. A duty

to defend may still arise if Plaintiff is aware, or could reasonably ascertain, facts that, if proven, would put the injury within the coverage of the policy. Waste Mgmt. of Carolinas, 340 S.E.2d at 377. If such were not the case, an insurer would be able to escape its duties simply by the fact that a plaintiff suing its insured minimally followed the well-pleaded complaint rule.

Defendant contends that a portion of the damages alleged in the Underlying Complaint occurred as a result of subsequent upgrades to four condos. The parties agree this work was not performed by Defendant, fell outside the scope of the contract, and occurred after the completion of Defendant's construction. Damages to upgraded portions of the condominiums that occurred after the Defendant had finished construction would be within the meaning of "property damage" as defined by North Carolina courts, and thus would fall under the scope of coverage as provided in the Policy. The duty to defend would thus arise if Plaintiff was aware of the fact that those damages occurred after the completion of Defendant's construction. Herein lies the factual debate.

At oral argument, Defendant argued that Plaintiff did nothing to investigate the allegations of the Underlying Complaint, nor did Plaintiff inquire as to whether any of the alleged damages may have involved anything outside of Defendant's own work. Defendant contends that it noticed Plaintiff of the nature of the damages to the four upgraded condos in a letter dated September 18, 2006, prior to resolution of the Underlying Litigation. Nevertheless, Plaintiff did not seek a declaratory judgment on the issue of its duty to defend nor did it defend under a reservation of rights at any time prior to settlement of the Underlying Litigation. Plaintiff, on the other hand, contends that it was not made aware of the nature of the damage to the condos until it received an interrogatory response dated May 12, 2008, more than a year after Defendant had resolved the Underlying Litigation. Plaintiff admits, however, that it had a duty to conduct a "reasonable"

investigation notwithstanding the information its insured (Defendant here) may provide. See also Waste Mgmt. of Carolinas, 340 S.E.2d at 378. Plaintiff contends its investigation efforts were adequate. Accordingly, there exists a genuine issue of material fact as to whether Plaintiff did ascertain, or could have reasonably ascertained, the facts that would trigger its duty to defend. Summary judgment is therefore not appropriate for either Plaintiff or Defendant.

Finally, the Court notes that Defendant correctly argues that North Carolina law provides a remedy to an insured when an insurer wrongfully refuses to defend. In such an instance, the insured is "liable to the insured for sums expended in payment or settlement of the claim, for reasonable attorneys' fees, for other expenses in defending the suit, for court costs, and for other expenses incurred because of the refusal of the insured to defend." St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 724 F.Supp. 1173, 1182 (M.D.N.C. 1989) (quoting Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 176 S.E.2d 171 (N.C. 1970); see also Nixon v. Insurance Co., 120 S.E.2d 430 (N.C. 1961). Thus, the factual issue of whether Plaintiff conducted a reasonable investigation carries a significant consequence should the jury decide it in favor of Defendant.

## Conclusion

For these reasons, the Court DENIES Plaintiff's Motion for Summary Judgment as to its duty to defend and GRANTS Plaintiff's Motion for Summary Judgment as to its duty to indemnify. (Doc. No. 24). The Court DENIES Defendant's Motions for Summary Judgment (Doc. No. 20). Furthermore, the Clerk is directed to set (and the parties are hereby given notice of) a pretrial conference for 3:30 on Wednesday, August 27, 2008, in Courtroom #1 of the Charles Jonas Building. Pretrial submissions are due accordingly.

IT IS SO ORDERED.

Signed: August 15, 2008

Frank D. Whitney
United States District Judge